IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

| | |
|---|---|
| BACKPAGE.COM, LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT E. COOPER, JR., Attorney General )<br>of the State of Tennessee; and TONY CLARK; )<br>BARRY STAUBUS; C. BERKELEY BELL; )<br>JAMES DUNN; MIKE FLYNN; RANDALL )<br>NICHOLS; DAVE CLARK; WILLIAM PAUL )<br>PHILLIPS; RUSSELL JOHNSON; STEVEN )<br>BEBB; WILLIAM H. COX, III; J. MICHAEL )<br>TAYLOR; RANDY YORK; MICKEY )<br>LAYNE; TOM P. THOMPSON; WILLIAM )<br>WHITESELL; CHUCK CRAWFORD; L. RAY )<br>WHITLEY; JOHN W. CARNEY; VICTOR S. )<br>JOHNSON, III; KIM HELPER; MIKE )<br>BOTTOMS; DAN M. ALSOBROOKS; )<br>HANSEL MCCADAMS; MIKE DUNAVANT; )<br>JAMES G. WOODALL; THOMAS A. )<br>THOMAS; GARRY BROWN; PHILLIP )<br>BIVENS; AMY P. WEIRICH; and LISA )<br>ZAVAGIANNIS; Tennessee District Attorneys )<br>for the 1st through 31st Judicial Districts, )<br>respectively, )<br>)<br>    Defendants, in their official )<br>    capacities. )<br>) | Case No. _____ |

**PLAINTIFF BACKPAGE.COM, LLC'S COMPLAINT TO DECLARE INVALID AND ENJOIN ENFORCEMENT OF TENNESSEE PUBLIC CHAPTER 1075 FOR VIOLATION OF THE COMMUNICATIONS DECENCY ACT AND THE FIRST AND FOURTEENTH AMENDMENTS AND COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION**

For its Complaint, Plaintiff Backpage.com, LLC ("Backpage.com") alleges as follows:

## INTRODUCTION

1. This is an action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin enforcement of a new Tennessee law, Public Chapter 1075, that, if effective, would impose an intolerable burden on speech across the country, in violation of the Communications Decency Act of 1996, 47 U.S.C. § 230, and the First and Fourteenth Amendments and Commerce Clause of the United States Constitution.

2. Public Chapter 1075, scheduled to take effect July 1, 2012, is based on a Washington State statute that a federal court has already temporarily enjoined. Like that statute, Public Chapter 1075 seeks to force, by threat of felony prosecution, websites and other providers to become the government's censors of user-submitted content. Although its ostensible purpose – to prevent the sex trafficking of children – is laudable, the law is not. It threatens up to 15 years imprisonment and a minimum $10,000 fine (the same penalties for kidnapping, voluntary manslaughter, robbery, and arson) against anyone who "sells or offers to sell an advertisement" that "would appear to a reasonable person to be for the purpose of engaging in" "a commercial sex act" "with a minor," even if no such content is ever published or the ad does not actually concern a minor.

3. It is not a defense under Public Chapter 1075 that the defendant did not know the person depicted in the post is a minor. Instead, the defendant must have obtained governmental or educational identification for the person depicted in the advertisement – even if the identification does not contain a photograph (*e.g.*, a birth certificate or marriage

2

Case 3:12-cv-00654   Document 1   Filed 06/27/12   Page 2 of 14 PageID #: 2

license) or the ad does not contain a photograph, rendering the age verification process meaningless.

4. To avoid prosecution, online service providers have few choices. They could attempt to review every user-submitted post to determine whether a Tennessee prosecutor could claim it "would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act … with a minor," and if so, obtain identification. Given that many websites receive millions of user-submitted posts (*e.g.,* more than 3.3 million posts on Backpage.com in April 2012 alone), this would be impractical or impossible. And, because the standards of Public Chapter 1075 are so broad and the penalties so severe, Backpage.com and other providers would have to require identification for any ads or other posts that come even remotely close to the prohibitions of the Act.

5. Alternatively, online service providers like Backpage.com could demand identification from *all* third-party users for *all* ads or other content for which they charge fees. Such a requirement would be so onerous that many (perhaps most) websites could not comply. And the age-verification requirement may well deter many users from posting content altogether because of the difficulties of providing identification or because of privacy concerns.

6. In all likelihood, online service providers and other publishers will choose a third option – they will stop allowing third-party content altogether, or at least, all adult-oriented content. And, because Public Chapter 1075 is not limited to conduct within Tennessee, online service providers may also be compelled to attempt to block or censor for Tennesseans information and content available elsewhere in the country.

7. Public Chapter 1075 contravenes well-established federal law. Section 230 of the Communications Decency Act prohibits the State from treating interactive computer service providers "as the publisher or speaker of any information" provided by a third party and expressly preempts inconsistent state laws. The First and Fourteenth Amendments prohibit state laws that severely inhibit and impose criminal liability on speech, as Public Chapter 1075 does. Finally, the Commerce Clause prohibits states from passing and enforcing legislation, like Public Chapter 1075, that regulates activity outside the state.

8. Public Chapter 1075 practically eliminates online service providers' ability to provide paid forums for legitimate public speech. The law chills speech and deters e-commerce and the growth and development of the Internet. If this Court does not enjoin enforcement of Public Chapter 1075 and declare it invalid, Backpage.com, countless other online service providers, and the public will be irreparably harmed.

## PARTIES

9. Plaintiff Backpage.com, LLC is a Delaware limited liability company with its principal place of business in Phoenix, Arizona. Backpage.com is an online classified advertising service, similar to craigslist.org.

10. Defendant Robert E. Cooper, Jr., is Attorney General of the State of Tennessee.

11. The remaining Defendants are District Attorneys General for each of the thirty-one Judicial Districts within the State of Tennessee, responsible for prosecuting all violations of Tennessee criminal law. T.C.A. § 8-7-103. More specifically, on information and belief, Plaintiff alleges that the following Defendants are the District Attorneys General of the respective Judicial Districts, as indicated:

| | |
|---|---|
| Tony Clark | District Attorney General, 1st Judicial District |
| Barry Staubus | District Attorney General, 2nd Judicial District |
| C. Berkeley Bell | District Attorney General, 3rd Judicial District |
| James Dunn | District Attorney General, 4th Judicial District |
| Mike Flynn | District Attorney General, 5th Judicial District |
| Randall Nichols | District Attorney General, 6th Judicial District |
| Dave Clark | District Attorney General, 7th Judicial District |
| William Paul Phillips | District Attorney General, 8th Judicial District |
| Russell Johnson | District Attorney General, 9th Judicial District |
| Steven Bebb | District Attorney General, 10th Judicial District |
| William H. Cox, III | District Attorney General, 11th Judicial District |
| J. Michael Taylor | District Attorney General, 12th Judicial District |
| Randy York | District Attorney General, 13th Judicial District |
| Mickey Layne | District Attorney General, 14th Judicial District |
| Tom P. Thompson | District Attorney General, 15th Judicial District |
| William Whitesell | District Attorney General, 16th Judicial District |
| Chuck Crawford | District Attorney General, 17th Judicial District |
| L. Ray Whitley | District Attorney General, 18th Judicial District |
| John W. Carney | District Attorney General, 19th Judicial District |
| Victor S. Johnson, III | District Attorney General, 20th Judicial District |
| Kim Helper | District Attorney General, 21st Judicial District |
| Mike Bottoms | District Attorney General, 22nd Judicial District |

| | |
|---|---|
| Dan M. Alsobrooks | District Attorney General, 23rd Judicial District |
| Hansel McCadams | District Attorney General, 24th Judicial District |
| Mike Dunavant | District Attorney General, 25th Judicial District |
| James G. Woodall | District Attorney General, 26th Judicial District |
| Thomas A. Thomas | District Attorney General, 27th Judicial District |
| Garry Brown | District Attorney General, 28th Judicial District |
| Phillip Bivens | District Attorney General, 29th Judicial District |
| Amy P. Weirich | District Attorney General, 30th Judicial District |
| Lisa Zavagiannis | District Attorney General, 31st Judicial District |

12. All defendants are sued in this action in their official capacities as representatives of the State of Tennessee and their respective Judicial Districts.

## JURISDICTION AND VENUE

13. This Court has jurisdiction of this action under 28 U.S.C. § 1331 because Backpage.com alleges a violation of 42 U.S.C. § 1983.

14. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

15. Venue is proper in this Court under 28 U.S.C. § 1391 because at least one Defendant in this action is located and resides in this judicial district and all Defendants reside in the State of Tennessee.

## FACTUAL ALLEGATIONS

16. In 2010, a group of State Attorneys General ("AGs"), including Defendant Cooper, mounted a public campaign demanding that craigslist remove the adult services category from its website. Later that year, craigslist did so.

17. Almost immediately, advertisements for adult services migrated to other categories on craigslist as well as other online services, including Backpage.com.

18. Backpage.com is the second largest online classified advertising service in the United States. Backpage.com allows users to post content in a number of categories (*e.g.*, local places, community, buy/sell/trade, automotive, musician, rentals, real estate, jobs, forums, dating, adult and services) and subcategories.

19. Shortly after craigslist eliminated its adult services category, the same AGs wrote to Backpage.com insisting that it eliminate its adult category.

20. When Backpage.com did not agree to this demand, the National Association of Attorneys General ("NAAG") sent and publicly released a letter to Backpage.com demanding removal of the adult category and requesting extensive information from Backpage.com "in lieu of a subpoena."

21. Backpage.com has attempted to cooperate with NAAG, but has resisted the demand to eliminate its adult category. Backpage.com maintains that selective online censorship is not a solution to trafficking and child exploitation but rather that technology and responsible businesses such as Backpage.com can help address these problems.

22. Backpage.com has implemented numerous measures to prevent and prohibit misuse of its service for illegal purposes, including human trafficking and sexual exploitation of children. It employs automated filtering and two rounds of manual review of individual

postings to identify, preclude and report suspect user-submitted posts to the authorities. And Backpage.com cooperates with law enforcement, for example by responding to subpoenas, usually within less than a day.

23.     On or about January 16, 2012, the legislature of Washington State, whose attorney general, Rob McKenna, was NAAG's president at the time, began considering legislation to create the offense of "advertising commercial sexual abuse of a minor." The law, Senate Bill 6251 ("SB 6251"), underwent several changes before it was passed and signed into law in March 2012.

24.     On June 5, 2012, two days before SB 6251 was scheduled to take effect, the federal district court for the Western District of Washington granted Backpage.com's motion for a temporary restraining order enjoining its enforcement. The Order will remain in effect until the Court decides whether to enter a preliminary injunction.

25.     On January 12, 2012, Tennessee legislators introduced Senate Bill 2371 and House Bill 2493 in the two houses of the Tennessee General Assembly. Initially, these identical bills revised the offense of trafficking a person for sexual servitude as set forth in T.C.A. § 39-13-309. On April 27, 2012, Senate Amendment 1197 was offered, adding the crime of "advertising commercial sex with a minor." The amendment was based on and similar to the first draft of the Washington State bill, SB 6251. While Washington abandoned that draft, SB 2371, as amended by SA 1197, passed both houses of the General Assembly with no changes.

26.     Governor Haslam signed SB 2371 on May 21, 2012, and it was designated Public Chapter 1075.

27.     Public Chapter 1075 states, in relevant part:

(a) A person commits the offense of advertising commercial sexual abuse of a minor if the person knowingly sells or offers to sell an advertisement that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act, as defined in § 39-13-301, with a minor.

(b)(1) Advertising commercial sexual abuse of a minor is a Class C felony.

(2) In addition to any authorized period of incarceration, advertising commercial sexual abuse of a minor is punishable by a minimum fine of ten thousand dollars ($10,000).

(c) In a prosecution under this statute, it is not a defense that the defendant did not know the age of the minor depicted in the advertisement. It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor appearing in the advertisement by requiring, prior to publication of the advertisement, production of a driver license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written allegations of the minor's age or the apparent age of the minor.

28. Public Chapter 1075 additionally defines certain terms used in the Act, as follows:

"Advertisement" means a notice or an announcement in a public medium promoting a product, service, or event, or publicizing a job vacancy;

"Commercial sex act" means any sexual act for which something of value is given or received;

"Minor" means an individual who is less than eighteen years old[.]

29. Absent relief from this Court, Public Chapter 1075 will take effect July 1, 2012.

30. Backpage.com and other online service providers face a threat of prosecution under Public Chapter 1075 if it takes effect, in particular given its vague language and standards. The Act criminalizes "sell[ing] or offer[ing] to sell" an advertisement, yet online

9

and print classified ad services do not sell advertisements; they make available forums where users can submit ads and other content. It is likewise unclear what constitutes an ad that "would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act" or to determine whether an advertisement involves a minor, particularly given that it is not a defense that an online service provider did not know or had no reason to know that a person depicted in a posting was a minor.

31. Backpage.com also faces a threat of prosecution because the history of Public Chapter 1075 makes clear that the Act is targeted at Backpage.com.

32. Backpage.com and other online service providers will also suffer immediate and irreparable harm if Public Chapter 1075 is allowed to go into effect, because the threat of criminal prosecution under the law will require them to opt between the impossible options of reviewing and censoring third-party content before posting it or obtaining government or school identification from third parties seeking to post content – or cause them to block user content altogether.

33. The public and particularly Internet users desiring to post third-party content will be irreparably harmed if Public Chapter 1075 is allowed to take effect because their rights of free speech will be burdened, chilled and/or precluded.

### CLAIM I: VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, PURSUANT TO 42 U.S.C. § 1983

34. Backpage.com incorporates all prior paragraphs as if fully set forth herein.

35. Backpage.com is a provider and user of an "interactive computer service" within the meaning of 47 U.S.C. § 230, because it operates the interactive online classified ad service Backpage.com.

36. Public Chapter 1075 violates Backpage.com's rights under 47 U.S.C. § 230(c)(1), because enforcement of the new law would treat Backpage.com, a provider of an interactive computer service, as the publisher or speaker of information provided by another information content provider.

37. Public Chapter 1075 is a "State … law that is inconsistent with" section 230, in direct violation of 47 U.S.C. § 230(e)(3).

38. Public Chapter 1075 violates and is preempted by section 230 of the CDA, and it therefore should be enjoined and declared invalid.

**CLAIM II: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983**

39. Backpage.com incorporates all prior paragraphs as if fully set forth herein.

40. Public Chapter 1075 is invalid under the First and Fourteenth Amendments of the United States Constitution because it purports to impose criminal liability on online service providers such as Backpage.com and others for the content of third-party advertisements, while precluding any defense based on lack of knowledge of the age of an individual depicted in the content. The Act therefore dispenses with the element of scienter as to the age of persons depicted in ads or online content, which would severely chill and restrict free speech.

41. Public Chapter 1075 is invalid under the First Amendment because it is a content-based restriction that impermissibly chills a substantial amount of protected speech, is not narrowly tailored to serve the State's asserted interests, and is far from the least restrictive alternative available to address the State's interests. Alternatively, Public Chapter 1075 is invalid under the First Amendment because it does not directly and materially

advance the State's asserted interest and it restricts far more speech than necessary to serve that interest.

### CLAIM III: VIOLATION OF THE COMMERCE CLAUSE OF THE CONSTITUTION, PURSUANT TO 42 U.S.C. § 1983

42. Backpage.com incorporates all prior paragraphs as if fully set forth herein.

43. Public Chapter 1075 violates the Commerce Clause of the United States Constitution because it attempts to regulate commercial transactions that take place wholly outside the State of Tennessee.

44. Public Chapter 1075 violates the Commerce Clause of the United States Constitution because it seeks to apply Tennessee law in a manner that constitutes an unreasonable and undue burden on interstate commerce that is excessive in relation to any local benefit conferred on the State of Tennessee and is likely to subject parties to inconsistent state regulations.

### CLAIM IV: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

45. Backpage.com incorporates all prior paragraphs as if fully set forth herein.

46. This action presents an actual case or controversy between Backpage.com and Defendants concerning the validity and enforceability of Public Chapter 1075.

47. Because Public Chapter 1075 violates the CDA, 47 U.S.C. § 230, and the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, Backpage.com asks for a declaration pursuant to 28 U.S.C. § 2201 that the law is invalid and unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Backpage.com, LLC respectfully requests that the Court:

12
Case 3:12-cv-00654   Document 1   Filed 06/27/12   Page 12 of 14 PageID #: 12

1. Declare that Tennessee Public Chapter 1075 violates 47 U.S.C. § 230 and the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution, and is invalid and unenforceable;

2. Preliminarily and permanently enjoin Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in concert or participation with them, from taking any actions to enforce Tennessee Public Chapter 1075, including any investigation, subpoena, arrest, and/or prosecution under the law;

3. Award Backpage.com its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. Award Backpage.com such other and further relief as the Court deems just and proper.

[signature block on the following page]

Respectfully submitted,

s/ Lucian T. Pera
Lucian T. Pera (Tenn. BPR No. 11641)
ADAMS AND REESE LLP
80 Monroe Avenue, Suite 700
Memphis, TN 38103
Tel: 901-524-5278
Fax: 901-524-5378
Lucian.Pera@arlaw.com

Craig L. Meredith (Tenn. BPR No. 29506)
ADAMS AND REESE LLP
424 Church Street, Suite 2800
Nashville, Tennessee 37219
Tel: (615) 259-1067
Fax: (615) 687-1508
Craig.Meredith@arlaw.com


James C. Grant (*pro hac vice* application pending)
Eric M. Stahl (*pro hac vice* application pending)
Ambika K. Doran (*pro hac vice* application pending)
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: 206/757-8096
Facsimile: 206/757-7096
jimgrant@dwt.com
ericstahl@dwt.com
ambikadoran@dwt.com

*Attorneys for Plaintiff Backpage.com, LLC*