**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **BACKPAGE.COM, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:12-cv-0654** |
| | ) | |
| **v.** | ) | **Judge Nixon** |
| | ) | |
| **ROBERT E. COOPER, JR. et al.,** | ) | **Magistrate Judge Griffin** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE IN OPOSITION TO**
**MOTION FOR PRELIMINARY INJUNCTION**

The Defendants, by and through their counsel the Attorney General and Reporter, and pursuant to Fed. R. Civ. P. 65, submit this response in opposition to Plaintiff's motion for a preliminary injunction. Plaintiff Backpage.com, LLC challenges newly enacted Tenn. Code Ann. § 39-13-314 on grounds that it is facially unconstitutional. As set forth below, the Plaintiff's facial challenge to the law fails because the statute is proper under the Communications Decency Act of 1996, 47 U.S.C. § 230, the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution.

## I. FACTS

The Tennessee General Assembly enacted Tenn. Code Ann. § 39-13-314 in the 2012 legislative session. It states:

> (a) A person commits the offense of advertising commercial sexual abuse of a minor if the person knowingly sells or offers to sell an advertisement that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act, as defined in § 39-13-301, with a minor.

1

(b)(1) Advertising commercial abuse of a minor is a Class C felony.[1]

(2) In addition to any authorized period of incarceration, advertising sexual abuse of a minor is punishable by a minimum fine of ten thousand dollars ($10,000).

(c) In a prosecution under this statute, it is not a defense that the defendant did not know the age of the minor depicted in the advertisement. It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor appearing in the advertisement by requiring, prior to publication of the advertisement, production of a driver license, marriage license, birth certificate, or other governmental or educational identification card or paper of the minor depicted in the advertisement and did not rely solely on oral or written allegations of the minor's age or apparent age of the minor.

Tenn. Code Ann. § 39-14-314.

Tenn. Code Ann. § 39-13-301 defines the terms "advertisement" and "commercial sex act." Under that statute, "advertisement" is defined as, "a notice or an announcement in a public medium promoting a product, service, or event, or publicizing a job vacancy." That same section defines "commercial sex act" as, "any sexual act for which value is given or received." Tenn. Code Ann. § 39-13-301.

The state has a strong and compelling interest in taking action to prohibit such advertisements. The protection of children generally has been long recognized as such an interest. In addition, the state has an interest in protecting vulnerable members of society. The child victims of the commercial sex trade fall into that category. Those victims are particularly vulnerable because of their age and life circumstances. Furthermore, the impacts on the child

---

[1] For a first time offender, a Class C felony is punishable by not less than three nor more than six years in the penitentiary. Since it involves a sentence of ten years or less, a person convicted of this crime would be eligible for probation. Tenn. Code Ann. § 40-35-303.

2

victims and the burdens such crimes place on society are particularly great. (Quin Affidavit, ¶¶6 and 7).

Tenn. Code Ann. § 39-13-314 was enacted to further or protect those interests described above. The statute was enacted following a two year study of human trafficking and sex trafficking of children that was commissioned by the Tennessee General Assembly in 2010. (Quin Affidavit, ¶¶ 14, 16 and 17). It was recognized that the commercial sex trafficking of children is a serious problem in Tennessee and that paid advertising plays a significant role in promoting and facilitating that trade. By prohibiting paid advertising of commercial sexual activity with children, the statute intends to hinder or prevent sex trafficking by depriving the "Johns" of an easy means for finding their victims. (Quin Affidavit, ¶¶ 16 and 17).

Until October 2010, the two largest internet services that carried paid advertising for sexual or "adult oriented" services were Craigslist and Backpage.com. Up until that time, Craigslist was the largest provider in terms of revenue from the sale of such online advertisements. Backpage.com became the largest provider of such advertisements in terms of sales revenue after Craigslist voluntarily eliminated its adult services page. (Quin Affidavit, ¶ 11).

## II. STATUTORY CONSTRUCTION OF TENN. CODE ANN. § 39-13-314

The case presents a constitutional challenge to a criminal statute. It is therefore appropriate to first review the statute to ascertain its meaning and scope. In doing so, Defendants submit that since Tenn. Code Ann. § 39-13-314 is an enactment of the Tennessee General Assembly; the court should apply Tennessee rules of statutory construction.[2]

---

[2] As set forth more fully herein, federal courts and courts in Tennessee apply the same basic rules of statutory construction.

3

Under Tennessee law, the primary objective of statutory construction is to ascertain and give effect to the intent of the legislature without broadening or restricting the statute beyond its intended scope. *State v. McNack*, 356 S.W.3d 906 (Tenn. 2011).[3] When the statutory language is clear and unambiguous, courts will find legislative intent from the plain meaning of the statutory text. *Kiser v. Wolfe*, 353 S.W.3d 741 (Tenn. 2011).[4] Courts will find that a statute is ambiguous only if the language is reasonably amenable to more than one interpretation. *Brundage v. Cumberland County*, 357 S.W.3d 361 (Tenn. 2011).[5]

The language of Tenn. Code Ann. § 39-14-314 is only reasonably amenable to one interpretation and is therefore clear and unambiguous. Under the plain meaning of its language, a person becomes subject to prosecution for violating that statute only if there is a *sale* of an *advertisement* for *commercial sex* with a *minor*. By its plain terms, the statute is aimed at a narrowly drawn category of advertising; where the contemplated transaction involves a "John" making a monetary payment in exchange for having sex with a child.

The statute further limits the criminal activity to the sale as opposed to the mere publication of the advertising. Under the clear language of the statute, there is no violation if the operator of a web site permits people to make postings in chat rooms or on bulletin boards. There is no violation if a site or host server permits people to post free advertisements. The statute is also not violated by permitting postings on sites that charge subscription fees for

---

[3] Under federal law, the primary objective of statutory interpretation is also to ascertain and give effect to legislative intent. *See, e. g., BMI v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005); *Shah v. Racetrac Petroleum, Inc.*, 338 F.3d 557 (6th Cir. 2003).

[4] Federal courts follow the same rule of construction. *See, e.g., United States v. Roth*, 628 F.3d 827 (6th Cir. 2011); *Franklin v. Kellogg Co*., 619 F.3d 604 (6th Cir. 2010); *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp.2d 672 (M.D. Tenn. 2010).

[5] Federal courts have adopted a similar view concerning the ambiguity of statutory language. *See, In re Butturini*, 411 B.R. 553 (E.D. Tenn. 2009)

4

generalized access as opposed to a monetary charge or other valuable consideration to post a specific advertisement.

The clear language of Tenn. Code Ann. § 39-13-304 also requires proof that the advertisement shows what a reasonable person would recognize as commercial sex with a minor. Use of such a standard shows that the legislature intended to apply an objective standard and not base a conviction on evidence related to the subjective thoughts or intent of the defendant.[6]

Moreover, there is nothing in the language of the statute to suggest that persons who provide servers that host various internet sites would be subject to prosecution if the operator of a site that uses those servers posted an advertisement that otherwise violated Tenn. Code Ann. § 39-13-314.  In addition to showing that the defendant sold an advertisement, a conviction under that statute requires proof that the defendant acted knowingly.  Tenn. Code Ann. § 39-11-106 defines a list of terms that are used throughout the Criminal Code.  The term "knowing" is defined in subsection 20, which states:

> "Knowing" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist.  A person acts knowingly with respect to a
>
> result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-106(20).

A host server that merely provides space for various internet sites therefore would not be subject to prosecution for two reasons.  First, they are not selling advertisements.  Second, the host provider is not acting knowingly within the meaning of Tenn. Code Ann. §§ 39-11-106 and

---

[6] The statute also provides a defense for persons who make a reasonable bona fide attempt to ascertain the true age of the person who is depicted in the advertisement.  Tenn. Code Ann. § 39-13-304(c).

5

39-13-314. At best, the provider of a host site might have some generalized knowledge that some of its customers might be selling advertisements of some nature. That, however is a far cry from showing that the host site operator has the level of knowledge required under both statutes.

At the same time, Tenn. Code Ann. § 39-13-314 cannot be construed to reach criminal conduct that occurs completely outside the boundaries of the State of Tennessee. Read alone, there is nothing in the text of Tenn. Code Ann. § 39-14-314 that geographically limits its application. The statute, however, must be read *in pari materia* with Tenn. Code Ann. § 39-11-103, which defines the territorial jurisdiction under Tennessee's criminal laws.[7] It states, in relevant part:

> (a) Every person, whether an inhabitant of this or any other state or country, is liable to punishment by the laws of this state, for an offense committed in this state, except where it is by law cognizable exclusively in the courts of the United States.
>
> (b)(1) When an offense is commenced outside of this state and consummated in this state, the person committing the offense is liable for punishment in this state in the county in which the offense was consummated, unless otherwise provided by statute.
>
> (2) It is no defense that the person charged with the offense was outside of this state when the offense was consummated, if the person used:
>
>> (A) An innocent or guilty agent; or
>> (B) Other means proceeding from the person.

Tenn. Code Ann. § 39-11-103.

Contrary to Plaintiff's stated concerns, it could not be held criminally responsible in Tennessee if it sells advertisements that are expressly targeted to people in other states but are

---

[7] Under the rules of statutory construction that are applied in both state and federal court, related statutes are to be read *in pari materia*. *See, e.g., United States v. Stauffer Chemical Co*., 684 F.2d 1174 (6th Cir. 1982); *State v. Turner*, 193 S.W.3d 522 (Tenn. 2006).

6

merely accessed by someone who is situated in Tennessee. Reading Tenn. Code Ann. § 39-11-103 together with Tenn. Code Ann. § 39-13-304 indicates that the legislature did not intend to subject anyone to prosecution unless there was a sufficient connection between the criminal conduct and the State of Tennessee. Thus, for example, a person who solicited offers to sell advertisements for commercial sex with minors to Tennessee residents would be subject to prosecution. Websites that sell advertisements for commercial sex with minors could arguably be subject to prosecution in Tennessee where the evidence shows that the advertisement was directed to Tennessee residents and the unlawful sexual contact was going to take place in Tennessee.[8]

On the other hand, if the sale of an offending advertisement occurs outside Tennessee, is not directed toward people who are residing or present in Tennessee, and the commercial sex act with a minor is going to take place outside the state, the person knowingly selling the advertisements is not going to be subject to prosecution for violating Tenn. Code Ann. § 39-13-304.

---

[8] The question of whether the statutes may be constitutionally applied in a particular case will usually depend on the specific facts as they are presented in a live criminal prosecution. Plaintiff has not mounted an as applied challenge in this case but argues instead that the statute is facially unconstitutional. As set forth more fully in Part III(C), under such a challenge, the State is not required to prove that the statute can be constitutionally applied in all situations or even in a majority of situations. A facial challenge will fail unless the person bringing the challenge meets the burden of proving that the challenged statute is unconstitutional no matter how it might be applied. A corollary of that rule is that a facial challenge will be defeated if the State can show that the statute can be constitutionally applied in some, but not necessarily all situations. As shown by the examples set forth above Plaintiff's facial challenge must fail because there are situations in which the statute may be constitutionally applied.

### III. ARGUMENT

### A. Standing

A lawsuit cannot be entertained unless the party has standing to bring the action. Without standing, there is no case or controversy to present to the court.[9] The Declaratory judgment Act did not relax the general rules governing standing. To the contrary, 28 U.S.C. § 2201(a), permits a court to enter declaratory relief only "[i]n a case of actual controversy...." Article III's "case and controversy" requirement is not satisfied, and a court therefore has no jurisdiction, when the claimant lacks standing, that is, "a sufficiently concrete and redressable interest in the dispute." *Warshak v. U.S.*, 532 F.3d 521, 525 (6th Cir. 2008). Thus, "[s]tanding is the 'threshold question in every federal case.'" *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir.2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.1999)).

Under the standing doctrine, a party may assert his own rights only. He cannot claim standing based upon the rights of others. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[10] Plaintiff bases its challenge on a claim that Tenn. Code Ann. § 39-13-314 is overbroad and therefore violates its First Amendment rights. Such challenges still require a showing of injury in fact. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007), (citing *Virginia v.*

---

[9] Standing is required under Article III and is a requirement that must be established before judicial power may be exercised. Article III of the United States Constitution "does not extend the 'judicial power' to any legal question, wherever and however presented, but only to those legal questions presented in 'Cases' and 'Controversies.'" *Warshak v. U.S.*, 532 F.3d 521, 525 (6th Cir. 2008) (quoting U.S. Const., art. III, § 2).

[10] The reason for this rule is twofold. First the limitation "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct.,519, 523. Second, it assures the court that the issues before it will be concrete and sharply presented. *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955, 104 S. Ct. 2839, 2846 (1984).

8

*Am. Booksellers Ass'n*, 484 U.S. 383, 392–93, 108 S.Ct. 636, 643 (1988). In *Am Booksellers'*

*Ass'n*, the Court held that "[t]o bring a cause of action in federal court requires that plaintiffs

establish at an irreducible minimum an injury in fact; that is, there must be some threatened or

actual injury resulting from the putatively illegal action." *Am. Booksellers Ass'n* 484 U.S. at 392-

.393. The plaintiff has the burden of establishing standing. *Rosen v. Tenn. Comm'r of Fin. &*

*Admin.*, 288 F.3d 918, 927 (6th Cir.2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,

561–62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

The Plaintiff lacks standing because it does not offer proof of any concrete harm. At

best, it has made allegations that amount to concerns about subjective chill. Such allegations are

not sufficient to establish standing. *Morrison v. Board of Education,* 521 F.3d 602 (6th

Cir.2008).[11]

The State concedes that in a pre-enforcement facial challenge to a criminal statute on

First Amendment grounds, one does not have to first risk exposure to actual arrest or

prosecution. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979). However,

the Plaintiff only makes a blanket, unsupported statement that Backpage.com faces a threat of

prosecution because the history of Tenn. Code Ann. § 39-13-304 is targeted at Backpage.com

---

[11] In *Morrison*, the court observed that "the Supreme Court is emphatic: 'Allegations of a subjective "chill" are not an adequate substitute for a claim of *specific present objective* harm or a threat of *specific future* harm.' " *Id.* at 608 (quoting *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)) (emphasis added). The court also noted that "absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Id.* at 609 (citations omitted). Furthermore, as shown more fully below, the speech at issue is, at best, commercial speech. if any protected speech is being challenged by the Plaintiff, it would be commercial speech. Standing based on the First Amendment doctrine of overbreadth does not apply to commercial speech. *See Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 497 (1982).

9

and because of the Chapter's "vague language and standards."[12] (Complaint, page 9-10). There is nothing to show that any prosecution has been threatened, is imminent, or is even likely. To make such a showing, Plaintiff would have to show that its conduct or practices are likely to bring it within reach of the statute.

Backpage has made no such showing. Tenn. Code Ann. § 39-13-304 is narrowly drawn to reach the knowing sale of paid advertising of commercial sex with minors.[13] Plaintiff has asserted that it has no intention of engaging in such activity. In fact, Backpage.com asserts that it, "prohibits illegal content and activity on its service, and especially condemns all forms of human trafficking and child exploitation. . . [they] take numerous steps to prevent any such abuse and misuse of the site." The Plaintiff also purports to employ "extensive, voluntary monitoring measures to prevent and remove improper user postings." These measures include automated filtering systems and a two-tiered manual review of nearly all contents submitted for posting to the adult and dating categories. *See* Affidavit of Carl Ferrer ¶¶ 7-13. Essentially, Plaintiff asserts that it goes through extreme measures to insure that Plaintiff does not sell advertisements to those who participate in the sex trafficking of minors. Such efforts do not show that Backpage is in any danger of prosecution. Rather such assertions, if true would indicate that Backpage

---

[12] Plaintiffs rely on the statements of the Washington Attorney General, and the extensive legislative history (which is not present in the passage of the Tennessee Law) of the Washington Bill to make the leap that Tennessee's law specifically targets Backpage.com and its actions. There is simply not enough evidence for the Court to make that leap. The only evidence the Plaintiff offers is a letter the Attorney General of Tennessee signed along with forty-three other Attorneys General requesting that the Plaintiff shut down its adult services site as Craiglist.com had done voluntarily.

[13] Tenn. Code Ann. § 39-13-304 does not prohibit the Plaintiff (or other online service provider or other print mediums) from engaging in any protected speech that involves consenting adults. As discussed infra, § 39-13-304 prohibits online service providers and print, or other advertisers, who sell advertisements from turning a blind-eye to the commercial sex-trade and prostitution of minors and profiting on the backs of those children.

10

would be unlikely to face prosecution. Therefore, there is no case or controversy sufficient to confer standing to bring this suit upon Backpage.com.

### B. Standards for a Facial Challenge

Plaintiff is not likely to succeed on a facial challenge to Tenn. Code Ann. § 39-13-304 because it has readily discernable constitutional applications. In this case, Plaintiff labels its claims as both facial and as-applied challenges to the Act, but because the "plaintiffs' claim and the relief that would follow ... reach beyond the particular circumstances of these plaintiffs," the claims that are raised are properly reviewed as facial challenges to the Act. *John Doe No. 1 v. Reed*, —— U.S. ——, 130 S.Ct. 2811, 2817, 177 L.Ed.2d 493 (2010). "To succeed in a typical facial attack, [a plaintiff] would have to establish that no set of circumstances exists under which [the statute] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, —— U.S. ——, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (internal citations and quotation marks omitted).

Facial challenges are disfavored for several reasons. *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 522 (6th Cir. 2012). Claims of facial invalidity often rest on speculation. *Id.* As a consequence, "they raise the risk of 'premature interpretatio[n] of statutes on the basis of factually barebones records.'" *Id.* (citing *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (internal quotation marks omitted). Courts must also be mindful that, "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (quoting Regan v. Time, Inc., 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984)).

11

Plaintiff cannot establish that Tenn. Code Ann. § 39-13-304 cannot be constitutionally applied under any circumstances and its facial challenge must therefore fail. As set forth more fully below, the statute can be constitutionally applied under certain circumstances. Tenn. Code Ann. § 39-13-304 is worded to apply to any media, including Tennessee print publishers who might be subject to prosecution for selling an advertisement that violates the statute.

### C. Standards for Preliminary Injunction

When ruling on a motion for a preliminary injunction, the court considers and balances four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999) *citing Blue Cross & Blue Shield Mutual of Ohio v. Columbia/ HCA Healthcare Corp.,* 110 F.3d 318 (6th Cir. 1997). When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### D. The Plaintiff Cannot Succeed on the Merits

### 1. § 39-13-314 is not Invalid, on its Face, under the CDA

Congress passed the Communications Decency Act (CDA), 47 U.S.C § 230, primarily to protect minors from exposure to obscene and indecent material on the internet. *See* S.Rep. No. 104-23, at 187-193 (1996) (noting that Congress "has been troubled by an increasing number of published reports of inappropriate uses of telecommunications technologies to transmit pornography, engage children in inappropriate adult contact, terrorize computer network uses

12

through 'electronic stalking' and seize personal information"); *see also Batzel v. Smith,* 333 F.3d 1018, 1026 (9th Cir.2003) (reviewing the legislative history of the CDA). Congress also sought to ensure the continued development of the internet. *See* 47 U.S.C § 230(b). In an effort to do so, Congress, "[w]hether wisely or not, made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others." *Blumenthal v. Drudge,* 992 F. Supp. 44, 49 (D.D.C.1998); *see also Batzel* at 1026 (noting that Congress made a policy decision to treat providers of third-party content on the internet differently than non-electron providers of third party content).

Two subsections of section 230 are relevant. First, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Second, "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

The Plaintiff cannot mount a facial challenge of § 39-13-314 under the argument that it is preempted by the CDA. Federal law preempts state law under three circumstances: (1) Congress explicitly defines the extent to which its enactments preempt state law; (2) in the absence of explicit statutory language, state law is preempted where it regulated conduct in a field that Congress intended the federal government to occupy exclusively; (3) state law is preempted to the extent that it actually conflicts with federal law. *English v. General Elec. Co.,* 496 U.S. 72, 78-79 (1990). 47 U.S.C. § 230(e)(3) plainly provides that the CDA preempts state law *only* when that law is inconsistent with the CDA.

13

To succeed in its facial attack, the Plaintiff has to establish that no set of circumstances exists under which § 39-13-314 would be valid, *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010); *See Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn.2009) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The Plaintiff's argument relies on the erroneous assumption that § 39-13-314 applies exclusively to internet usage. In fact, § 39-13-314 applies to all media that contain advertisements. The CDA, however, only applies to internet communications. As such, the statute cannot be invalidated on the based on the argument that the CDA preempts it.

Furthermore, the CDA does not provide immunity from suit to entities like Backpage.com. On the contrary, the District Court for the Middle District of Tennessee has specifically held that the CDA is not immunity from suit. The Court drew a clear distinction between immunity from liability and immunity from being sued all together. The Court held that the CDA did not provide the latter immunity.[14] *Energy Automation Systems, Inc. v. Xcentric Ventures, LLC,* 2007 WL 1557202, 12 (M.D.Tenn.). If the State were to initiate a prosecution or other action such as a search warrant under a State criminal law, a defendant could potentially assert the CDA as a defense. However, the CDA cannot be asserted in a facial challenge as immunity from suit.

Tenn. Code Ann. § 39-13-314 is not preempted by the CDA even as applied to the Plaintiff because it does not treat an interactive computer service provider as a publisher or speaker of information. In an as-applied challenge, to be protected from liability under the CDA,

---

[14] The District Court of the Middle District of Tennessee denied the Defendant Xcentirc Ventures, LLC's motion to dismiss Plaintiff Energy Automation Systems, Inc. claims of (1) defamation, (2) violation of the Tennessee Consumer Protection Act, (3) interference with business relations, and (4) civil conspiracy. Xcentric operates the Bad Business Bureau which provides a forum in which consumers may accuse companies and individuals of bad business practices. Xcentric moved to dismiss the claims of Energy Automation Systems arguing lack of personal jurisdiction and immunity from suit under the CDA. The Court held that the CDA did not provide immunity from suit.

14

a defendant must establish proof of three elements: (1) the defendant is a provider or user of an "interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; (3) the challenged communication is information provided by another information content provider. *Batzel* at 1037.

Tenn. Code Ann. § 39-13-314 is not preempted by the CDA because a prosecution under Tennessee the statute would not satisfy the second prong of the above test. The Tennessee statute regulates conduct, while the CDA protects speech. *See Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir.1997) (stating that "Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium"). The Tennessee statute criminalizes only the *selling* or *offering to sell* advertisements that would appear to a reasonable person to be for the purpose of engaging in a commercial sex act with a minor. Tenn. Code Ann. § 39-13-314(a). The statute does not prohibit the posting of such advertisements. *Id.* Under the statute, the Plaintiff could post such advertisements free from the threat of prosecution as long as it does not charge or offer to charge money for posting them.[15] As such, the statute would not treat any interactive computer service providers as the publishers or speakers of information and run afoul of the CDA.

The fact that § 39-13-314 prohibits even the *offer* to sell advertisements for commercial sex acts with a minor is clear proof that the statute would not treat an interactive computer service provider as an internet content provider. The statute punishes the conduct that is a precursor to the posting of the advertisement—the selling or offer to sell the advertisements. *See* Tenn. Code Ann. § 39-13-314. An interactive computer service provider would be liable under

---

[15] Backpage.com allows almost all of its users to post advertisements for free with the exception of adult services advertisers. *Declaration of Carl Ferrer*, Exhibit 2 ¶ 6.

15

the statute whether or not it actually disseminates the advertisement. The CDA only protects an interactive computer service provider for content that is posted in order to promote free speech. *See Zeran* at 330. The CDA was not intended to absolve from liability people who profit or attempt to profit off of the trafficking of minors.

The Plaintiff only cites cases where the claims arose out of the speech itself. Any potential prosecutions under Tenn. Code Ann. § 39-13-314 would be based on the conduct of the interactive computer service provider and would be much more akin to the case of *City of Chicago v StubHub!, Inc.*, 624 F.3d 363 (7th Cir.2010). In *StubHub!, Inc.*, the city of Chicago sued the internet ticket resale service seeking judgment that the service was responsible for collecting special city amusement tax on ticket sales. *Id.* StubHub! claimed immunity under the CDA as an interactive computer service provider that allows third parties to resell tickets. *Id.* at 365. The court held that the CDA did not protect StubHub! from Chicago's claim. The court stated:

> (c)(1) does not create an immunity of any kind. It limits who may be called the publisher of information that appears online. That might matter to liability for defamation, obscenity, or copyright infringement. But Chicago's amusement tax does not depend on who 'publishes' any information or is a 'speaker'. Section 203(c) is irrelevant. *Id.* at 366.

Similarly, under the Tennessee statute, the issue of who publishes or speaks the information is irrelevant. The statute is concerned with the conduct of the sale, and is aimed at preventing people from making money off of knowingly selling advertisements for commercial sex acts with minors.

Tenn. Code Ann. § 39-13-314 is consistent with the CDA and federal criminal laws. Plainly, Congress did not intend to preempt state laws that are consistent with the CDA. 47 U.S.C. § 230(e)(3). Legislative history demonstrates that the CDA was enacted to protect minors

16

from obscene material on the internet, S.Rep. No. 104-23, at 187-193 (1996), and, at the same time, protect free speech on the internet from the threat of tort law. *See Zeran* at 330. By punishing only the conduct that endangers minors, Tenn. Code Ann. § 39-13-314 is entirely consistent with the CDA because it protects minors without hostility to First Amendment rights on the internet, as discussed *supra*.

Moreover, § 39-13-314 is identical in effect to the federal sex trafficking law whose enforcement is not impaired by the CDA. 47 U.S.C. § 230(e)(1) states:

> No effect on criminal law
>
> Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other federal criminal statute.

Under 18 U.S.C. § 1591, anyone who knowingly benefits financially from knowingly or with reckless disregard for the fact causing a person under the age of 18 to engage in a commercial sex act is guilty of a criminal offense. 18 U.S.C. § 1591 and Tenn. Code Ann § 39-13-314 both criminalize the knowing profiting from the sex trafficking of minors. Any actor that could be prosecuted under § 39-13-314 could be prosecuted under 18 U.S.C. § 1591. Therefore, Plaintiff's argument that the CDA would protect it from criminal prosecution fails.

**2. § 39-13-314 Does Not Create a Strict Liability Crime in Violation of the First and Fourteenth Amendments**

Plaintiff's second basis for requesting an injunction against enforcement of Tenn. Code Ann. § 39-13-304 in its entirety is the allegation that it creates a strict liability crime in violation of the First and Fourteenth Amendments. To support a facial challenge, the Plaintiff must show that no set of circumstances exists under which Tenn. Code Ann. § 39-13-304 would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Under this test, a facial challenge to Tenn.

17

Code Ann. § 39-13-304 on the ground that it creates strict liability absolutely fails because there are applications of Tenn. Code Ann. § 39-13-304 in which a defendant would have a level of knowledge that would moot the question whether he or she was being held to a strict liability standard. Additionally, any misguided attempt to impose a strict liability standard in a given prosecution would be subject to an as-applied challenge at that time, thus preserving the facial constitutionality of the statute.

Plaintiff specifically alleges that § 39-13-304 lacks scienter because it does not require that the defendant know that the person depicted in the advertisement is a minor. This is not a requirement under constitutional principles. "The general principle [is] that where scienter is required no crime is committed absent the requisite state of mind." *Gonzales v. Carhart,* 550 U.S. 124, 148 (2007). Tenn. Code Ann. § 39-13-304 does require that a person knowingly publish an advertisement that depicts a minor and that a reasonable person would know that such advertisement depicts a minor. It is perfectly constitutional to hold a defendant criminally responsible for advertising the sex trafficking of minors when they are in some manner aware that advertisements for which they accept payment tout illegal conduct.

Plaintiff cites *Smith v. California*, 361 U.S. 147 (1960) as analogous to the case at hand. In *Smith,* the Supreme Court struck down a Los Angeles ordinance that made it a crime for booksellers to possess obscene books. The Court in *Smith* reasoned that, "[t]here is no specific constitutional inhibition against making the distributors of good (sic) the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller. By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter."

18

*Smith v. People of the State of California*, 361 U.S. 147, 152-53, 80 S. Ct. 215, 218, 4 L. Ed. 2d 205 (1959). However, the Supreme Court has also held that, to render constitutional a statute which prohibits the exhibition or distribution of obscene material, it is not necessary to require that a defendant know or believe that the material in question is legally obscene; it is sufficient to require that the defendant have knowledge of the contents or character of the obscene material. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Rosen v. United States*, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896); *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). In *Hamling* the Supreme Court said:

> 'We think the 'knowingly' language of 18 U.S.C. s 1461, and the instructions given by the District Court in this case satisfied the constitutional requirements of scienter. It is *constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributes*, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U.S.C. s 1461 or by the Constitution.' (Emphasis added.)

*Id*. 94 S.Ct. at 2910—2911.

In the *Rosen* case, the Supreme Court, in rejecting a claim that it was constitutionally necessary to show that the defendant knew or believed that the material in question was obscene, stated:

> 'The statute is not to be so interpreted. The inquiry under the statute is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character; and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon the opinion or belief of the person who, with

19

knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States.'

*Id*. 16 S.Ct. at 438.

In the *Mishkin* case, the Supreme Court, after noting that the New York statute in question had been construed to require an awareness on the part of the defendant of the character of the obscene material distributed, said:

'The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity. The New York definition of the scienter required by (the New York statute) amply serves those ends, and therefore fully meets the demands of the Constitution.'

*Id*. 86 S.Ct. at 965.

Obviously, Tenn. Code Ann. § 39-13-304 complies with the scienter requirement of the First Amendment as construed in the foregoing cases.[16]

Tenn. Code Ann. § 39-13-304 requires that the prohibited act of advertising the commercial sexual abuse of a minor be knowingly done. "Knowingly" is defined in Tenn. Code Ann. § 39-11-106 as meaning, with respect to the conduct or to circumstances surrounding the conduct, when "the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-106(a)(20).   *Smith v. California*, is simply not on point for the reason that, in those cases, the courts were dealing with statutes which required no knowledge by the defendant of the contents of the alleged obscene material which the defendant distributed or exhibited.

---

[16] In obscenity cases the scienter requirement is even more important because the concept of obscenity is often subjective.  Age, however, is an objective measure that can be easily verified by requesting proof of age by methods such as those that appear in Tenn. Code Ann. § 39-13-314.

The Plaintiff in this case would have the Court give to Tenn. Code Ann. § 39-13-304 a strained construction by holding that the word "knowingly" applies only to the sale of the advertisement. As the State construes this Act, the element of scienter is required for every offense defined by the Act. The State's construction requires that the defendant, in a prosecution under Tenn. Code Ann. § 39-13-314, knowingly sells an advertisement that appears to be for the purpose of engaging in a commercial sex act with a minor.

Plaintiff also mistakenly relies on *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464 (1994) to say that a defendant must always know that the person depicted in an advertisement is a minor. While the Supreme Court held that for a prosecution for a violation of 18 U.C.C. §2252, which criminalizes certain activities related to material involving the sexual exploitation of minors, requires that person depicted is actually a minor and the person must know a person is a minor, the court so held in part because, "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults…[T]herefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct." *X-Citement Video, Inc.*, 513 U.S. at 73, 115 S. Ct. at 469. In Tennessee, as well as the majority of the entire United States, prostitution is illegal. Therefore, unlike in *X-Citement*, one would not reasonably expect to be free from regulation if the conduct did not involve minors either.

The language: "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor," does not dispense with a scienter requirement. "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a

21

'reasonable' person in other areas of the law." *Hamling* 418 U.S. at 104-05, 94 S. Ct. at 2901, citing *Stone v. New York, C. & St. L.R. Co.*, 344 U.S., 407, 409, 73 S.Ct. 358, 359, 97 L.Ed. 441 (1953); *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 525—526, 76 S.Ct. 608, 609—610, 100 L.Ed. 668 (1956).  A crime will have been committed when a defendant knowingly sells an advertisement that appears to a juror, based on the juror's experiences, to be for the purpose of engaging in a commercial sex act with a minor, i.e. for the purposes of engaging in the prostitution with a minor.  The fact a juror makes a "reasonable judgment" determination does not dispense with the scienter requirement.

### 3.  Tenn. Code Ann. § 39-13-314 Does Not Violate the First Amendment.

#### a.  Tenn. Code Ann. § 39-13-314 does not regulate speech protected by the First Amendment.

In its plain terms, Tenn. Code Ann. § 39-13-314 prohibits a person from knowingly selling, or offering to sell, an advertisement that for the purpose of engaging in a commercial sex act with a minor.  Tenn. Code Ann. § 39-13-314 concerns commercial speech.  Commercial speech is speech proposing a commercial transaction.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562, 100 S. Ct. 2343, 2349, 65 L. Ed. 2d 341 (1980).  "Advertisement" is defined in Tenn. Code Ann. § 39-13-301 to include announcements promoting a product or service, and "commercial sex act" is defined as any sexual act for which something of value is given or received."  Tenn. Code Ann. § 39-13-301.  Therefore, the target of Tenn. Code Ann. § 39-13-314 (advertisements promoting paid sexual activity with a minor) is commercial speech.

For commercial speech to come within the protections of the First Amendment, it must, at a minimum, concern lawful activity.  *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human*

22

*Relations*, 413 U.S. 376, 388-89, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (holding that discriminatory advertisements are illegal commercial speech entitled to no First Amendment protection); *Thompson v. Western States Medical Center*, 535 U.S. 357, 367, 122 S.Ct. 1497, 1504 (2002) ("Under [the Central Hudson] test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment."); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 497 n. 7, 116 S.Ct. 1495 (opinion of Stevens, J.) (reaffirming principle that First Amendment does not protect commercial speech about unlawful activities). Thus, Tenn. Code Ann. § 39-13-314 may be constitutionally applied to sales of ads for the purposes of engaging in commercial sex acts with minors, since it is illegal commercial speech akin to, if not exactly the same as, "a want ad … soliciting prostitutes," which the government may ban outright without running afoul of the First Amendment. *Pittsburgh Press*, 413 U.S. at 388-89, 93 S.Ct. 2553.

Plaintiff strains to categorize the *entirety* of Tenn. Code Ann. § 39-13-314 as "sweep[ing] within its ambit lawful content outside the State's goal of preventing sexual exploitation of minors." This argument is extremely disingenuous. In order to violate Tenn. Code Ann. § 39-13-314, Plaintiff must knowingly sell an ad that proposes sexual activity with a minor in exchange for something of value. Plaintiff alleges that the Act is "not limited to content depicting minors" that it bars any material that "would appear to" concern a minor, even if the content actually concerns only adults. This construction is at odds with the plain language of the statute. The statute requires that an actual minor be depicted in the advertisement. This is readily apparent from the defenses contained in subsection (c), which states, "it is not a defense that the defendant did not know the age **of the minor depicted in the advertisement**…" and "the defendant made a reasonable bona fide attempt to ascertain the true age **of the minor**

23

**appearing in the advertisement.**" (Emphasis added.) Thus, a minor must actually appear in the advertisement. Sales of advertisements that contain no actual minors would not subject someone to prosecution for violation of Tenn. Code Ann. § 39-13-314.

The act criminalizes the sale of an ad that is for the purposes of engaging in prostitution with a minor. It does not even attempt to reach the realm of consensual actions between adults. However, assuming *arguendo* that it did reach actions between adults, it would only "sweep within its ambit" offers of commercial sex acts between adults, i.e. prostitution, which is illegal under Tenn. Code Ann.§ 39-13-513, so it would still not be speech subject to protection under the First Amendment.

### b. Tenn. Code Ann. § 39-13-314 is not a content-based restriction requiring strict scrutiny.

Tenn. Code Ann. § 39-13-314 is not a content-based restriction, and even if persons who are at risk of prosecution under the statute take actions to reduce their risk, the collateral burdens on speech, if any, would not violate the First Amendment. The statute criminalizes only the sale or offer to sell an advertisement for the purposes of engaging in a commercial sex act with a minor. Any sex act, let alone commercial sex act, involving a minor and an adult is a crime.

Because a commercial sex act with a minor is a criminal act, an advertisement for a commercial sex act depicting a minor is unprotected speech. "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 533 U.S. 285, 297 (2008). As discussed more fully above, the government may regulate or completely ban speech proposing illegal activity.[17] *Village of Hoffman Estates v.*

---

[17] The speech, if any, regulated by § 39-13-314 is commercial speech. *See Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In *Central Hudson*, the Court developed a four-part analysis to determine whether restrictions on commercial speech violate the First

*Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Because Tenn. Code Ann. § 39-13-314 proscribes only unprotected speech, it is facially valid. Alternatively, even if commercial sex act advertisements involving adults were protected speech, any collateral burdens on such speech survive scrutiny under the test for restrictions on commercial speech. An advertisement for a commercial sex act is an advertisement that does no more than propose a commercial transaction, which makes it commercial speech. *See Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976). *Cf. S.O.C., Inc.*, 152 F.3d at 1143 (ordinance reached commercial and noncommercial speech because it did not limit the scope of the regulated activity to purely commercial expression). Plaintiffs' allegation that the statute burdens vast amounts of non-commercial speech reflects their misapprehension that the statute targets only advertisements for commercial sex acts, and not just those advertisements involving minors.

If collateral burdens on advertisements for commercial sex acts occur between adults, they are justified under the *Central Hudson* test as a valid restriction on commercial speech because, first, commercial sex acts, i.e. prostitution, between adults is illegal and, second, Tenn. Code Ann. § 39-13-314 serves a substantial governmental interest, directly and materially advances that interest, and reaches no further than necessary to accomplish the objective. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). The state's interest in reducing the sexual exploitation of children is substantial.

Tenn. Code Ann. § 39-13-314 directly and appropriately advances this significant interest by attaching criminal liability to the sale of commercial sex advertisements depicting minors.

---

Amendment. The factors are: (1) whether the speech concerns lawful activity and whether it is misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether it is more extensive than necessary to serve that interest. *Id.*

Criminal liability will balance the monetary incentive to sell these advertisements and, thus, likely reduce the number of them and correspondingly reduce the number of minors trafficked for commercial sex acts. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) ("It is assuredly a matter of 'common sense' ... that a restriction on the advertising of a product characteristic will decrease the extent to which consumers select a product on the basis of that trait."). An effort to reduce the number of advertisements for commercial sex acts depicting minors is a reasonable step that the state may take in an iterative response toward addressing the problem of sex trafficking. The statute reaches no further than necessary to accomplish its objective.

> **c.** **Tenn. Code Ann. § 39-13-314 is not underinclusive.**

Plaintiff's argument targeting the age verification affirmative defense as making the law underinclusive also fails. Challenges to laws based on underinclusiveness are usually brought because of differential treatment of communicators based on subject matter. In this case, the law applies only to persons who knowingly sell or offer to sell advertisements that propose commercial sex acts with minors and a defendant does not have a First Amendment right to do so. It applies to all such people who wish to facilitate the conveyance of the message of the trafficking in minors for profit and therefore is not constitutionally underinclusive.

The statute's age verification affirmative defense affects only a narrow group of persons involved in advertisements for commercial sex acts, meaning that the burden, if any, falls on unprotected speech, or in the alternative, commercial speech. Contrary to Plaintiff's assertion, the affirmative defense does not render Tenn. Code Ann. § 39-13-314 unconstitutionally underinclusive. Although in some cases the First Amendment is violated because "the underinclusiveness of a law-i.e., the failure of the government to regulate other, similar activity-

26

may give rise to a conclusion that the government has in fact made an impermissible distinction on the basis of the content of the regulated speech," such a conclusion is not possible where the content of the differently regulated speech is "virtually identical." *DLS v. City of Chattanooga*, 107 F.3d 403, 412 n. 7 (6th Cir.1997) (holding, in rejecting a similar underinclusiveness challenge, that a statute regulating live cabarets differently than other forms of adult entertainment was not content-based because the content of the differently regulated modes of expression was "virtually identical").

Here Plaintiff's underinclusive argument targets an affirmative defense by saying that the law is defective because it gives categories of information that may provide proof that the defendant made a reasonable attempt to ascertain the true age of the minor when the minors age could reasonably be questioned. The list by its plain terms is not exhaustive as the Plaintiff sets it out to be because it allows for certain listed items as well as other governmental identification or education identification or paper. The statute's affirmative defense does not make distinctions among kinds of speech, and the possibility of some occurrences of fraudulent presentation of age identification is not a credible argument that it fails to achieve its ends. Therefore, the statute's affirmative defense does not create the constitutional problem that Backpage.com alleges.

### d. Tenn. Code Ann. § 39-13-314 is not overbroad

Normally, a facial challenge to a legislative act is the most difficult challenge to successfully mount because the plaintiff must establish that no set of circumstances exists under which the act would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court has reiterated that the overbreadth doctrine is "strong medicine" and has employed it with hesitation and only as a last resort. *Id.* at 769; *see Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Consequently, because overbreadth in the First Amendment area may prohibit a state

from enforcing a statute against conduct that is unquestionably within its power to proscribe, the Supreme Court has insisted that the overbreadth involved must be "substantial" and "real" before the statute involved may be invalidated on its face. *New York v. Ferber*, 458 U.S. 747, 769-770 (1982).[18]

However, the overbreadth doctrine does not apply to commercial speech. *Flipside*, 455 U.S. 489 (1982). As discussed above, if any speech is proscribed by Tenn. Code Ann. § 39-13-314 it is commercial speech. Furthermore, it proscribes commercial speech promoting or encouraging illegal sex trafficking in minors which is speech a government may regulate or ban entirely. According to well-settled constitutional principles, a regulation concerning commercial speech cannot be challenged on overbreadth grounds.

### e. Tenn. Code Ann. § 39-13-314 is not unconstitutionally vague

"Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'" *Rose v. Locke*, 423 U.S. 48, 49-50 (1975) (quoting *Robinson v. United States*, 324 U.S. 282, 286 (1945)). A statute is not unconstitutionally vague merely because it calls upon the trier of fact to apply his reasonable judgment. *United States v. Ragen*, 314 U.S. 513, 523 (1942). Under the due process clauses of the Fifth and Fourteenth amendments, a criminal statute is unconstitutionally vague if it fails to provide meaningful and

---

[18]    [T]here comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law – particularly a law that reflects "legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick*, 413 U.S. at 615. For there are substantial social costs created by the overbreadth doctrine when it blocks application of the law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct. To insure that these costs do not swallow the social benefits of declaring a law overbroad, [the Court has] insisted that a law's application to protect its speech be "substantial," not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications . . . before applying the strong medicine of overbreath invalidation." *Id.* at 613.

*Virginia v. Hicks*, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2197 (2003).

fair warning of the proscribed conduct and adequate standards to ensure even-handed enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A statute does not comport with due process if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845 (2008). The Supreme Court has invalidated statutes that "tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent' – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* at 306 (citations omitted). Additionally, a plaintiff must demonstrate that the law is "impermissibly vague in all of its applications." *Flipside*, 455 U.S. at 497.

Plaintiff asserts the need for rigorous adherence to these requirements when First Amendment freedoms are at stake. Yet, as discussed above, Tenn. Code Ann. § 39-13-314 does not implicate First Amendment scrutiny because it criminalizes only offers to engage in illegal transactions. Even under a more stringent analysis where First Amendment rights are implicated, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams* 553 U.S. at 305. "The most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Tobacco Accessories & Novelty Craftsmen Merchants Ass'n of Louisiana v. Treen*, 681 F.2d 378, 382-83 (5th Cir. 1982).

"A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The Supreme Court has said that when a statute "interferes with the right of free speech or of association, a

29

more stringent vagueness test should apply." *Id.*, at 499, 102 S.Ct. 1186. "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.' " *Williams*, supra, at 304, 128 S.Ct. 1830 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

To determine whether a statute is void for vagueness, courts examine the entire text of the statute and give the words of the statute their ordinary meaning. 1A Sutherland Statutory Construction § 21:16 (7th ed.) The term "commercial sex act" is not vague. The term is defined as "any sexual act for which something of value is given or received." Tenn. Code Ann. § 39-13-301. This almost identical to the definition contained in the federal sex trafficking statute, which defines "commercial sex act" to mean, "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C.A. § 1591. The federal statute has been upheld twice. *See United States v. Wilson,* No. 10-60102, 2010 WL 2991561, at *8 and *9 (S.D. Fla. July 27, 2010); *and see United States v. Paris*, No. 03:06-CR-64, 2007 WL 3124724, at *13 (D. Conn. Oct. 24, 2007).

Of course, the scope of the term "commercial sex act" may not be clear in every application. Here the statutory terms are clear in their application which means that Plaintiff's' vagueness challenge must fail. Even assuming that a heightened standard applies because the statute potentially implicates speech, the statutory terms are not vague as applied to the Plaintiff.

### f. Tenn. Code Ann. § 39-13-314 Does Not Violate the Commerce Clause

The Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. In addition to granting Congress the power to regulate interstate commerce, the "dormant" aspect of the Commerce Clause limits the ability of individual states to interfere with interstate commerce by

30

prohibiting states from directly discriminating against interstate commerce, *see, e.g. Philadelphia v. New Jersey*, 437 U.S. 617 (1978), and from enacting regulations that, although facially nondiscriminatory, unduly burden it. *See, e.g., Kassel v. Consolidated Freightways Corp. of Del.*, 450 U.S. 662 (1981).

While Congress's power to regulate commerce is broad, it has limits. *United States v. Lopez,* 514 U.S. 549, 556-558 (1995); *Maryland v. Wirtz,* 392 U.S. 183, 196 (1968) (overruled on other grounds, *National League of Cities v. Usery,* 426 U.S. 833 (1976), overruled by *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985)). In *Jones & Laughlin Steel* 301 U.S. 1, 37 (1937), the Court cautioned that the scope of the interstate commerce power "must be considered in the light of our dual system of government" so as not to effectuate complete central control of government.

The Plaintiff's facial challenge to Tenn. Code Ann. § 39-13-314 under the Commerce Clause fails. To succeed in its facial attack, the Plaintiff has to establish that no set of circumstances exists under which Tenn. Code Ann. § 39-13-314 would be valid, *United States v. Stevens,* 130 S.Ct. 1577, 1587 (2010); *See Waters v. Farr*, 291 S.W.3d 873, 921 (Tenn.2009) (citing *United States v. Salerno,* 481 U.S. 739, 745 (1987)). The Plaintiff's argument relies on the erroneous assumption that Tenn. Code Ann. § 39-13-314 singularly targets internet usage. In fact, the word "internet" does not appear anywhere in the statute. The Plaintiff has only offered the argument that Tenn. Code Ann. § 39-13-314 is invalid under the Commerce Clause as applied to internet communications. The statute is clearly meant to apply to local print media such as newspapers and magazines. The regulation of the advertisements in local media has no effect on interstate commerce and, therefore, is one example of a circumstance under which §

31

39-13-314 would be valid under the Commerce Clause. As such, the Plaintiff's facial challenge to the Act under the Commerce Clause cannot succeed.

The type of commerce that Tenn. Code Ann. § 39-13-314 seeks to prevent is not legitimate commerce that receives Commerce Clause protection. The Plaintiff wishes to continue making money selling advertisements that would appear to a reasonable person to be for the purpose of engaging in a commercial sex act with a minor. In upholding a federal statute that prohibited crossing state lines for the purpose of engaging in sexual acts with a juvenile against a challenge under the Commerce Clause, the United States District Court for the District of Columbia held that "one does not have a fundamental right to travel for illicit purposes." *United States v. Brockdorff,* 992 F. Supp. 22, 25 (D.D.C. 1997). Similarly, one does not have a fundamental right to profit from advertising and furthering illegal conduct.

As discussed *infra,* courts have found that statutes that prevent the use of the internet as an instrumentality to lure a minor into sexual activities do not burden interstate commerce because the conduct is not the sort that deserves economic protection. The fact that the illegal act of sex with a minor is the end result of the internet transmission is what strips the conduct of any protection under the Commerce Clause. *See People v. Foley,* 94 N.Y.2d 668,684 (2000), *cert. denied,* 531 U.S. 875 (2000) (stating, "we are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity"). Although the type of transmission is different in the case at bar, the end result is sexual contact with a minor. The Plaintiff has presented no evidence that any legitimate commerce will be burdened by the Act.

Tenn. Code Ann. § 39-13-314 is valid under the Commerce Clause even as applied to the Plaintiff. "The internet is undeniably an incident of interstate commerce, but the fact that

32

communication thereby can affect interstate commerce does not automatically cause a state statute in which internet use is an element to burden interstate commerce." *People v. Hsu*, 82 Cal.App.4[th] 976, 983 (4th Dist. 2000). Furthermore, people selling advertisements for minors engaging in commercial sex acts should not be insulated from prosecution simply because they use the internet. *See Hatch v. Superior Court*, 80 Cal. App. 4th 170, 195 (4th Dist. 2000), *as modified on denial of reh'g*, (Apr. 26, 2000) *and review denied*, (July 29, 2000). In the absence of conflicting federal legislation, the States retain the authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36 (1980).

Where the statutory regulation effectuates a legitimate local public interest without discriminating against interstate commerce, the regulation is valid unless it imposes a clearly excessive burden on interstate commerce.[19] *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970). "And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.*

Tenn. Code Ann. § 39-13-314 survives a Commerce Clause challenge under this balancing test. To the extent the Act regulates commerce, it does so evenhandedly and treats all sales of advertisements that offer commercial sex with a minor the same whether the advertisements originate in-state or out-of-state. Furthermore, there is no question that § 39-13-314 effectuates a legitimate local public interest in protecting minors. The statute is targeted at protecting minors by eliminating the sex trafficking of children in the State. Statutes affecting public safety carry a strong presumption of validity. *Bibb v. Navajo Freight Lines*, 359 U.S. 520,

---

[19] Plaintiffs do not allege discrimination against out of state actors.

524 (1959). The Supreme Court has found that States have a compelling interest in protecting the physical and psychological well-being of minors. *See New York v. Ferber*, 458 U.S. 747, 756-757 (1982); *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982). § 39-13-314 safeguards the physical and psychological well-being of minors by imposing a punishment on people who profit off of the sale of advertisements that offer minors for commercial sex.

Contrary to the Plaintiff's claim, the statute does not create an excessive burden on interstate commerce. The statute only affects the rights of a very narrow class of people who knowingly sell or offer to sell advertisements for commercial sex acts with minors. There are no cases which give the intention to engage in sex with a minor or the communications employed in realizing that intention protection under the dormant commerce clause. *Hatch* at 195.

The Plaintiff cites case law that is clearly distinguishable from the case at bar to support its assertion that § 39-13-314 violates the Commerce Clause. The only cases Plaintiff cites are cases in which individual states have attempted to regulate transmission of harmful material to minors via the Internet. § 39-13-314 does not in any way attempt to regulate the transmission of harmful material to minors via the internet. The Act criminalizes the knowing sale of or knowing offer to sell an advertisement that would appear to a reasonable person to be for the purposes of engaging in a commercial sex act with a minor.

The facts of this case are much more akin to cases in which explicit material is transmitted to a minor over the internet with the intent to lure the minor into sexual activity.[20]

---

[20] These cases have distinguished statutes that simply criminalize the *transmission* of indecent materials to minors from statutes which criminalize the transmission of materials in order to initiate sex with a minor. The courts have found the latter statutes to be constitutional because they do not seek to regulate the transmission materials but rather the underlying conduct of attempting to have sex with a minor. Such conduct, the courts have concluded, does not

34

Similar to the laws upheld in these cases, § 39-13-314 does not seek to stifle speech but rather to prevent the exploitation of underage children by regulating conduct that is a essential component of sex trafficking—the selling of advertisements for commercial sex acts.

## CONCLUSION

Based on the foregoing, the Attorney General and Reporter, together with the District Attorneys General for the State of Tennessee, respectfully request that this Court deny Plaintiff's motion.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter


/s/ Lyndsay F. Sanders
MICHAEL A. MEYER
Deputy Attorney General
Michael.Meyer@ag.tn.gov
LYNDSAY F. SANDERS (BPR# 22849)
Senior Counsel
Lyndsay.Sanders@ag.tn.gov
RACHEL JRADE-RICE (BPR#29245)
Assistant Attorney General
(*application for admission pending*)
Office of the Tennessee Attorney General
Law Enforcement & Special Prosecutions

---

deserve the protection of the Commerce Clause. *See People v. Foley,* 94 N.Y.2d 668 (2000), *cert. denied,* 531 U.S. 875 (2000) (holding that a statute that criminalized knowingly sending indecent material to a minor did not regulate interstate commerce but rather the conduct of pedophiles); *Ohio v. Eal,* 2012 W.L. 1078331 (Ohio App. 10 Dist.); *People v. Hsu,* 82 Cal. App. 4th 976 (1st Dist. 2000), *review denied,* (Nov. 29, 2000) (holding that the state's interest in preventing harm to minors outweighed the statute's incidental effect on interstate commerce and noting that "it is difficult to conceive of any legitimate commerce that would be burdened by penalizing); *Hatch v. Superior Court,* 80 Cal. App. 4th 170 (4th Dist. 2000), *as modified on denial of reh'g,* (Apr. 26, 2000) *and review denied,* (July 29, 2000) (holding that a law which criminalizes the transmission of harmful material to minors for the purpose of seduction did not burden any protected right of commerce); *People v. Barrows,* 273 A.D.2d 246 (2d Dep't 2000), *leave to appeal denied,* 95 N.Y.2d 888 (2000) (holding that a statute that criminalized knowingly sending indecent material to a minor sanctioned activities that did not deserve economic protection and represented an appropriate exercise of the State's police power).

P.O. Box 20207
Nashville, TN 37202-0207
Tel:    615.741.4087
Fax:    615.532.4892

CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2012, the foregoing document was filed with the Clerk of Court through the Electronic Filing System. Notice of this filing will be sent by operation of the Court's Electronic Filing System to all counsel of record indicated on the electronic filing receipt.

/s/ Lyndsay F. Sanders
LYNDSAY F. SANDERS (BPR# 22849)
Senior Counsel

36